IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALAHASSEE DIVISION

**KEVIN MARSHALL, NANCY BAKER, JENNIFER BAREFIELD, EVITA BELL, ANTHONY DATTOLO, KALE DRISCOLL, MICHAEL DRISCOLL, PAUL DUTCHER, RON HARDING, LORI KREISHER, JOSEPH RENNE, AZARIAH ROBINSON, DENISE SHORTER and MARY THOMPSON**

    **Plaintiffs,**

vs.                                                                 Case No. _____

**EXPRESS COURIER INTERNATIONAL, INC., and EMP LSO HOLDING CORPORATION**

    Defendants,

## ORIGINAL COMPLAINT

Plaintiffs Kevin Marshall, Nancy Baker, Jennifer Barefield, Evita Bell, Anthony Dattolo, Kale Driscoll, Michael Driscoll, Paul Dutcher, Ron Harding, Lori Kreisher, Joseph Renne, Azariah Robinson, Denise Shorter and Mary Thompson ("Plaintiffs"), by and through their attorneys, file this Original Complaint ("Complaint") against Defendants Express Courier International, Inc., and EMP LSO Holding Corporation (hereinafter collectively referred to as "Defendant"), and in support thereof do hereby state and allege as follows:

### I.    PRELIMINARY STATEMENTS

1.    Plaintiffs bring this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for declaratory judgment, monetary damages, liquidated

damages, prejudgment interest, and a reasonable attorney's fee and costs, as a result of Defendant's failure to pay Plaintiffs minimum and overtime wages as required by law.

## II.   JURISDICTION AND VENUE

2. The United States District Court for the Northern District of Florida has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

3. Defendant conducts business within the State of Florida, providing courier/delivery services within the State of Florida.

4. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Florida has personal jurisdiction over Defendant, and Defendant therefore "resides" in Florida.

5. A substantial part of the acts complained of herein were committed and had their principal effect against Plaintiffs within the Tallahassee Division of the Northern District of Florida; venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.   THE PARTIES

6. Plaintiff Kevin Marshall is an individual and resident of Florida.

7. Plaintiff Nancy Baker is an individual and resident of Florida.

8. Plaintiff Jennifer Barefield is an individual and resident of Florida.

9. Plaintiff Evita Bell is an individual and resident of Florida.

10. Plaintiff Anthony Dattolo is an individual and resident of Florida.

11. Plaintiff Kale Driscoll is an individual and resident of Florida.

12. Plaintiff Michael Driscoll is an individual and resident of Florida.

13. Plaintiff Paul Dutcher is an individual and resident of Florida.

14. Plaintiff Ron Harding is an individual and resident of Florida.

15. Plaintiff Lori Kreisher is an individual and resident of Florida.

16. Plaintiff Joseph Renne is an individual and resident of Florida.

17. Plaintiff Azariah Robinson is an individual and resident of Florida.

18. Plaintiff Denise Shorter is an individual and resident of Florida.

19. Plaintiff Mary Thompson is an individual and resident of Florida.

20. At all times relevant to this Complaint, each Plaintiff performed courier services for Defendant within the State of Florida.

21. Defendant Express Courier International, Inc. ("Express"), is a foreign, for-profit corporation, whose principle address is 238 Bedford Way, Franklin, Tennessee 37064.

22. Defendant EMP LSO Holding Corporation ("LSO") is a foreign, for-profit corporation, whose principle place of business is 3060 Peachtree Road NW, Suite 360, Atlanta, Georgia 30305.

23. Defendant provides on-demand and scheduled courier services.

24. Defendant's primary business purpose is to provide courier/delivery services, and Defendant engages couriers/drivers to accomplish this goal.

25. Courier/delivery services are at least one integral part of Defendant's business.

26. Defendant's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

27. Defendant has at least two employees that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including, but not limited to, medical supplies and bio-materials, office supplies, auto parts, manufactured goods, or office equipment for the benefit of Defendant.

## IV. FACTUAL ALLEGATIONS

28. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

29. To carry out Defendant's courier/delivery services, Defendant contracted with couriers/drivers (referred to herein as "couriers" or "drivers") during the relevant time.

30. Each Plaintiff performed the basic duties of a courier during the relevant time.

31. The basic duties of a courier include transporting and delivering packages to Defendant's customers.

32. To support its delivery business, Defendant maintained a hierarchy of corporate level employees to oversee numerous field "branches," which were located throughout the southeastern United States and were divided into regions.

33. At the corporate level, Defendant maintained an operations department, a compliance department, an accounting department, a marketing department, an information-technology department, and an insurance department.

34. Defendant's compliance department was responsible for determining what was required to conduct Defendant's courier services in compliance with applicable laws and communicating those requirements to Defendant's branches.

35. The compliance department was in charge of preparation, maintenance and use of Defendant's standard Agreement.

36. Defendant's compliance department was also responsible for processing all applications to become drivers and vetting them for minimum requirements.

37. Defendant's corporate office had a Director of Business Analytics whose job was to help the branch run more efficiently or perform research to improve business operations.

38. Defendant also employed a Director of Operations to support branches and sales by mining data and running reports for the company for maximizing profits.

39. Defendant also maintained a corporate-level dispatch office, with an attachment of "Central Ops Specialists," whose job was to monitor customer requirements and make sure customer expectations were met.

40. Each branch had a senior employee in charge of the branch and drivers.

41. Branch Managers were responsible to ensure that Plaintiffs were operating under applicable company, federal and state rules, regulations and operating procedures.

42. Branch Managers were also responsible to ensure that customers were receiving quality delivery services and that deliveries were made on time.

43. Branch Managers were required to facilitate branch standards reporting to Defendant's corporate office regarding how satisfied customers were with drivers' delivery performance.

44. Defendant required Branch Managers to have management skills that would allow them to ensure that drivers delivered packages on time and that customers were satisfied and to bring in new customers or sell services.

45. Branch Managers or whoever else was in charge of the facility had the authority to terminate Plaintiffs.

46. Branch Managers were also tasked with managing the branch within budgeted guidelines from Defendant's corporate office and the parameters set by the Regional Director.

47. Branch Managers were also responsible for maintaining a positive and safe working environment for individuals working at the branch, which included drivers.

48. Branch Managers were in charge of assigning the routes to drivers.

49. Branch Managers, not drivers, were responsible for setting long and short-term business objectives.

50. Defendant treated each Plaintiff as an "independent contractor" for purposes of the FLSA.

51. Defendant required each and every potential courier to enter into a standard agreement, which Defendant called an "independent contractor agreement" or "owner-operator agreement."

52. No Plaintiffs were involved in drafting the terms of Defendant's standard agreement.

53. Defendant required each driver to satisfy whatever needs and requirements Defendant's customers had.

54. All drivers were hired to work for Defendant for an indefinite period of time.

55. Defendant expected each Plaintiff to wear a photo identification badge.

56. Plaintiffs were expected to follow Defendant's dress code and guidelines.

57. Defendant leased warehouses in which drivers picked-up parcels for delivery.

58. No drivers shared in Defendant's profits.

59. No drivers shared in Defendant's losses.

60. Defendant paid drivers through a combination of piece rates, route rates or delivery rates.

61. Defendant entered into contracts with their customers, and no drivers signed contracts with Defendant's customers.

62. Defendant set prices to its customers for certain types of packages or delivery routes without driver input or negotiation.

63. Defendant determined where to locate Defendant's branches and offices without driver input.

64. Defendant made decisions on advertising Defendant's business without driver input.

65. Plaintiffs did not advertise themselves as independent businesses.

66. Defendant made decisions on what new business to pursue or take without driver input.

67. Drivers did not negotiate contracts or prices with Defendant's customers.

68. Defendant expected drivers to follow Defendant's policies regarding how to track deliveries.

69. Defendant's standard agreement required drivers to obtain and maintain certain types of insurance.

70. Defendant's standard agreement required drivers to use communication equipment that was compatible with Defendant's operating system.

71. Defendant's standard agreement gave Defendant the sole discretion to investigate, adjudicate and charge drivers for delays, shortages, mis-deliveries, and claims related to lost, damaged or contaminated loads.

72. Defendant's standard agreement required drivers to obtain written consent from Defendant before operating their vehicles for another motor carrier.

73. If a customer had a complaint about any driver, the customer was supposed to complain to someone at the branch or to corporate headquarters, not to the driver.

74. Defendant generally did not pay any drivers any overtime premium for hours that they worked over forty hours per week.

75. If any driver worked more than forty hours per week, Defendant's policy was not to pay that driver an overtime premium of one and one half times the driver's regular rate for the hours over forty.

76. Defendant had a general practice keeping no contemporaneous records of time that drivers performed courier/delivery services on Defendant's behalf.

77. After deducting for expenses related to the operation of at least some Plaintiffs' vehicles in the course of performing job duties for Defendant, some Plaintiffs' pay regularly fell below the minimum wages required by the FLSA.

78. Defendant knew or should have known that the job duties of Plaintiffs required Plaintiffs to work hours in excess of forty per week, yet Defendant failed and refused to compensate Plaintiffs for their work as required by the FLSA.

79. At all times relevant hereto, Defendant was aware of the minimum wage and overtime requirements of the FLSA.

80. Defendant purposefully and knowingly classified drivers as "independent contractors."

## VI.   FIRST CAUSE OF ACTION
### (Individual Claims for FLSA Overtime Violations)

81. Plaintiffs repeat and re-allege paragraphs 1-80 of this Complaint as if fully set forth in this section.

82. 29 U.S.C. § 207 requires any enterprise engaged in commerce to pay all employees one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

83. Defendant misclassified all Plaintiffs as independent contractors.

84. Defendant also unlawfully refrained from paying Plaintiffs an overtime premium for hours over forty per week.

85. Defendant's failure to pay each Plaintiff all overtime wages owed was willful.

86. By reason of the unlawful acts alleged herein, Defendant is liable to each Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VIII.   SECOND CAUSE OF ACTION
### (Individual Claims for FLSA Minimum Wage Violations)

87. Plaintiffs repeat and re-allege paragraphs 1-80 of this Complaint as if fully set forth in this section.

88. 29 U.S.C. § 206 requires any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week.

89. Defendant misclassified all Plaintiffs as independent contractors.

90. The costs that Plaintiffs incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendant, caused some Plaintiffs' free and clear pay to fall below minimum wages.

91. Defendant's failure to pay each Plaintiff all minimum wages owed and failure to reimburse Plaintiff's work-related vehicle expenses was willful.

92. By reason of the unlawful acts alleged herein, Defendant is liable to each Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## IX.   PRAYER FOR RELIEF

WHEREFORE, premises considered Kevin Marshall, Nancy Baker, Jennifer Barefield, Evita Bell, Anthony Dattolo, Kale Driscoll, Michael Driscoll, Paul Dutcher, Ron Harding, Lori Kreisher, Joseph Renne, Azariah Robinson, Denise Shorter and Mary Thompson, respectfully pray for declaratory relief and damages as follows:

A. That each Defendant be summoned to appear and answer herein;

B. That each Defendant be required to account to Plaintiffs and the Court for all of the hours worked by Plaintiffs and all monies paid to them;

C. A declaratory judgment that Defendant's practices alleged herein violate the FLSA and attendant regulations;

D. Judgment for damages for all unpaid minimum wages and overtime compensation under the FLSA and attendant regulations;

E. Judgment for liquidated damages pursuant to the same laws in an amount equal to all unpaid minimum wages and overtime compensation owed to Plaintiffs during the applicable statutory period;

F. An order directing Defendant to pay Plaintiffs prejudgment interest, reasonable attorney's fees and all costs connected with this action;

G. A trial by jury; and

H. Such other and further relief as this Court may deem just and proper.

Respectfully submitted this 18th day of January, 2018,

By: /s/ C. Ryan Morgan
C. Ryan Morgan
Fla. Bar No. 0015527
rmorgan@forthepeople.com
MORGAN & MORGAN, P.A.
20 North Orange Avenue, 14th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 245-3401

By: Joshua West
*pro hac vice forthcoming*
west@sanfordlawfirm.com
SANORD LAW FIRM, PLLC

>One Financial Center
>650 South Shackleford, Suite 411
>Little Rock, Arkansas 72211
>Telephone: (501) 221-0088
>Facsimile: (888) 787-2040